IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

John Strength, an individual,                    Case no.: 21-10450-CV
                                                 Judge:
    PLAINTIFF,
-vs-

Feldman Automotive Group, a
Michigan Corporation, and Feldman Chevrolet/
Hyundai of New Hudson LLC, a Michigan
Limited Liability Company, Liberty Chevrolet LLC,
A Michigan Limited Liability Company,
Paige Milam, an individual, and J.C. Cramer, an individual,

    DEFENDANTS.

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

This is a civil action seeking relief for illegal workplace retaliation for refusing to provide false testimony in support of the employer's false claims in defense to a civil discrimination action brought by Laura Vanliet against the same employer Defendants and a related claim for breach of a settlement agreement. The termination of Plaintiff's employment as finance manager is in violation of Michigan public policy, the Michigan Whistleblowers Protection Act and Title VII's anti-retaliation provisions designed to protect those who provide truthful testimony in the context of an investigation or legal action concerning the violation

1

of its provisions. The settlement agreement was breached by Defendants when they refused to perform until after Plaintiff had given a statement under oath about the Vanliet termination (a condition imposed by Defendant making the settlement a bribe and unenforceable).

For his complaint, Plaintiff states:

1. Plaintiff is a resident of Handy Township, Livingston County, State of Michigan.

2. Defendant Feldman Automotive Group is a Michigan Corporation and apparently a Holding Company for a group of automotive dealerships operating under the "J. Feldman" or "Jay Feldman" name.

3. Defendant Feldman Chevrolet of New Hudson LLC is a Michigan entity that operates the Hyundai and Chevrolet dealerships located in Hew Hudson, Michigan.

4. Defendants Milam and Cramer are employee agents of the Defendant Feldman Chevrolet of New Hudson and reside in Livingston County, Michigan.

5. Plaintiff was hired as the Finance Manager at the Feldman Chevrolet of New Hudson. Two months later, he was promoted to Finance Director where he remained until his termination.

6. This action is within the subject matter jurisdiction of this court as the amount in controversy, based on Plaintiff's salary and benefits, is in excess of $75,000.00 exclusive of interest and costs.

7. This court is a proper venue within which to commence and try this action based on the nature of the claims, the location of the Defendant's operations, the situs of the illegal conduct and Plaintiff's residence.

## FACTUAL ALLEGATIONS

8. Plaintiff began his employment with Defendants in January of 2020.

9. Defendants Milam and Cramer were at all times agents and senior executives at Defendant Feldman Chevrolet of New Hudson. Milam is the HR Officer and Cramer is the Compliance Officer.

10. In February of 2020, Plaintiff was at the Hyundai store when he was approached by the General Manager.

11. Due to the absence of his immediate supervisor who would ordinally perform that task, Plaintiff was asked to terminate the employment of one of the store's employees, Laura Vanliet.

12. Specifically, the employee was being terminated for being absent from work, but she presented a letter from her doctor stating her medical need to be absent on the date in question.

13. Plaintiff protested the termination to HR at the store. Plaintiff was directed to proceed with the termination and did so.

14. Plaintiff continued his work at the dealership.

15. In September of 2020, Plaintiff learned that Laura Vanliet had filed an EEOC claim or lawsuit.

16. On or before October 14, 2020, Plaintiff was informed that a mediation hearing was scheduled in the Vanliet termination. Plaintiff was asked to attend a pre-mediation conference with several employees of the dealership and its counsel.

17. At the meeting, it was suggested that Plaintiff was either mistaken or had misunderstood his assignment, and that he was only directed to transfer Vanliet to the Chevrolet dealership, not terminate her employment.

18. Specifically, the managers at the meeting, along with counsel, suggested that the dealership would falsely claim that Ms. Vanliet's position was eliminated at the Hyundai side of the dealership and she was merely being transferred to the Chevrolet side of the dealership.

19. The discussion also included how the dealership would manipulate the internal payroll documentation to make it consistent with the false narrative.

20. Plaintiff advised that this was untrue. He stated he was directed by senior management to terminate her employment and did so.

4

21. Moreover, the dealership had prepared documents consistent with termination and took actions consistent with termination, not a mistaken reassignment, which would have been reflected in payroll and other internal changes in advance of the termination.

22. The mediation took place on October 14, 2020 at the dealership offices.

23. The two senior managers, Milam and Cramer, emerged from the mediation and discussed it with Plaintiff.

24. Milam and Cramer advised that the mediation did not go well and that Vanliet did not come close to accepting their predetermined $25,000 offer to "make this go away".

25. Moreover, Vanliet was not offered reinstatement, consistent with a mistaken termination.

26. Both managers then announced to Plaintiff that he would have to "line up his testimony with the dealership's defense" that there was a misunderstanding and that Vanliet was mistakenly terminated.

27. Plaintiff advised both managers at that moment that this was not true, that he would not lie in order to protect his employer and cover up its wrongful actions. He reminded both that he had advised HR that the termination was illegal given that Vanliet's absence was excused by her doctor in accordance with dealership policy.

28. Both managers looked at Plaintiff with disbelief, then immediately walked away.

29. Plaintiff was off work per his regular work schedule on October 15th, 2020.

30. On October 16, 2020, Plaintiff returned to work and was terminated. No reason was given other that Plaintiff was an at-will employee.

31. Following his termination, plaintiff retained counsel to investigate and pursue this action.

32. In the course of the preparation of this claim, counsel contacted the Defendants and through counsel, engaged in settlement discussions.

33. After multiple phone calls and the exchange of multiple e-mails between counsel, the parties agreed to a settlement of $25,000. See Ex. 1, e-mail.

34. Counsel for Defendant insisted that the payment only be made after Plaintiff gave a statement or authored an affidavit under oath as to his testimony in the Vanliet termination.

35. Counsel for Plaintiff advised that the provision of a statement or affidavit was agreeable, but the consideration must be paid before the statement was given so that the payment was not conditional on any specific testimony and otherwise made as a bribe.

36. The effect of conditioning payment on the testimony would not only likely constitute an illegal bribe, but cause the settlement agreement to become unenforceable.

37. Plaintiff advised he would not provide the testimony before payment. Defendant advised it would not pay the consideration before the testimony was given despite Plaintiff's stated concerns. See e-mail, Ex. 2.

## COUNT I [ALL DEFNDANTS]
## TITLE VII ANTI-RETALIATION VIOLATION

38. Defendants are subject to Title VII of the Civil Rights Act of 1964, 42 USC Section 2000e.

39. Both Plaintiff and Vanliet are covered and protected employees under Title VII, id.

40. The Act prohibits employers, including these Defendants, from any adverse employment action, including termination, for filing or being a witness in an EEOC charge, complaint, investigation, or lawsuit.

41. Plaintiff was directly involved in the wrongful and illegal termination of Laura Vanliet and advised the Defendants against taking the action.

42. Plaintiff later was identified as a witness in the EEOC investigation and civil action filed by Vanliet, and following an unsuccessful mediation of that

case was told that he needed to "get his testimony in line" with the dealership's defense of a mistaken termination.

43. Plaintiff refused to lie or promise to lie as his employer requested and was illegally retaliated against by having his employment terminated one day later.

44. The Defendants' actions are a violation of Title VII's anti-retaliation provisions.

45. As a direct and proximate result, Plaintiff has sustained both economic and non-economic damages in the form of lost wages, lost benefits, emotional distress and shock for conducting himself in the right was under the law and being retaliated against for doing so.

## COUNT II [ALL DEFENDANTS]
## MICHIGAN WHISTLE BLOWER'S PROTECTION ACT VIOLATION

46. Defendants are employers subject to the MWBPA, MCL 15.361 et seq.

47. Plaintiff is an employee who is covered and protected by the MWBPA.

48. Plaintiff reported a violation of law, specifically Title VII, by the Defendants to both the Defendants' HR and again to its senior executives following the October 14, 2020 EEOC mediation hearing.

49. Defendant's illegally, and in violation of MCL 15.362, retaliated against Plaintiff for reporting Defendant's illegal and unlawful employment

practices and refusing to testify falsely on behalf of Defendants in a pending civil action brought against the dealership by terminating his employment.

50. As a direct and proximate result, Plaintiff has sustained both economic and non-economic damages in the form of lost wages, lost benefits, emotional distress and shock for conducting himself lawfully only to be illegally retaliated against.

## COUNT III [DEALERSHIP ONLY]
## WRONGFUL DISCHARGE VIOLATION OF PUBLIC POLICY

51. The law of the State of Michigan recognizes exceptions to the "at-will" doctrine that prohibit termination of employment for certain reasons.

52. Plaintiff was terminated from his employment with Defendants for protesting the illegal termination of another employee and also for refusing to "line up" his testimony with the dealership's defense in the corresponding EEOC and civil actions brought by that employee.

53. Plaintiff's termination is a violation of Michigan Public Policy because: a. explicit legislative enactments exist which prohibit his termination under the circumstances, including Title VII and the MWBPA, supra; b. the reason for the discharge was Plaintiff's refusal to violate the law by giving false testimony to protect Defendants from a Title VII claim and c. the reason for

9

discharge was Plaintiff's exercise of the right conferred by those statutes by giving lawful and true testimony without fear of retaliation.

54. As a direct and proximate result of Defendants' wrongful termination of Plaintiff's employment, Plaintiff has sustained both economic and non-economic damages in the form of lost wages, lost benefits, emotional distress and shock for conducting himself lawfully only to be illegally retaliated against.

WHEREFORE, PLAINTIFF PRAYS FOR a monetary judgment in his favor and against the Defendants to compensate him for the consequences of the Defendants' illegal conduct, including compensation for economic damages, non-economic damages, statutory damages and his actual attorney fees.

## COUNT IV [DEALERSHIP ONLY]
## BREACH OF SETTLEMENT AGREEMENT

55. Plaintiff and Defendants entered into a settlement agreement of the above claims in January of 2021.

56. Defendant breached the settlement agreement by refusing to pay the negotiated consideration until Plaintiff had given sworn testimony in a related case.

57. The Defendant's demand for testimony before payment constituted an illegal bribe or solicitation of a bribe.

10

58. The effect of the bribe or offer of a bribe to Plaintiff by Defendant would have created an illegal or unenforceable settlement agreement.

59. Both Defendants' refusal to pay the agreed upon $25,000 and the condition of providing testimony in a related case before payment was made constitute breaches of the settlement agreement.

60. As a direct and proximate result of the Defendants' breach, Plaintiff has suffered economic damages in the amount of $25,000.

WHEREFORE, Plaintiff requests that judgment be entered in his favor and against Defendants in the amount of $25,000 plus interest, costs and attorney fees.

## COUNT V [DEALERSHIP ONLY]
## CIVIL EXTORTION

61. Plaintiff and Defendant entered into a settlement agreement to resolve his claims stemming from his termination of employment.

62. The parties agreed that Defendant would pay Plaintiff the sum of $25,000 in exchange for a mutual release of all claims.

63. Plaintiff agreed to give a statement under oath as to his knowledge of the facts relative to the claims in the related Vanliet case having already provided a draft of this complaint [without COUNT IV and V] to Defendant.

64. After agreeing to the essential terms, Defendant then, with knowledge of Plaintiff's likely testimony from this complaint, demanded that Plaintiff give

his statement first before receiving the consideration in order to influence and control his testimony and otherwise turn it into a bribe and create an unenforceable settlement agreement.

65. Plaintiff refused to give testimony before being paid the settlement as it was akin to or an actual bribe in exchange for testimony and illegal.

66. Defendant then attempted to revoke the settlement.

67. Defendant's actions constitute civil extortion in that Defendant demanded that Plaintiff engage in illegal conduct [accept a bribe] and give false testimony in order to receive his settlement.

68. Defendant's actions are illegal and constitute civil extortion entitling Plaintiff to recover the settlement consideration.

WHEREFORE, Plaintiff prays for judgment in his favor and against the Defendant in the amount of $25,000 plus interest, costs and attorney fees.

## JURY DEMAND

Plaintiff requests a trial by jury.

Respectfully Submitted,

/s/Joseph C Bird

Date: 2/25/2021